**Joseph A. MAGGIO, Plaintiff,**

v.

**Donna SHALALA, Secretary of the Department of Health and Human Services, Defendant.**

**No. 98–CV–37A (H).**

United States District Court,
W.D. New York.

Jan. 12, 1999.

138

Anthony Szczygiel, Legal Services for the Elderly, Disabled or Disadvantaged of Western New York, Inc., Buffalo, New York, for plaintiff.

Hon. Denise E. O'Donnell, United States Attorney, Jane B. Wolfe, Assistant United States Attorney, of counsel, Buffalo, New York, for the government.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of judgment. Plaintiff initiated this action pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b) seeking judicial review of the final decision of the Secretary of Health and Human Services (the "Secretary") denying Medicare Part B coverage for dental services. The Secretary has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the following reasons, the Secretary's motion is denied.

## BACKGROUND

Plaintiff Joseph Maggio was born on April 9, 1928. He is currently 70 years old. He has a history of chronic lymphocytic leukemia and severe thrombocytopenia. During his treatment he has developed several complications, including nutritional difficulties due to extreme pain in his gums when he consumed food. In early 1994, Dr. Michael Caligiuri, plaintiff's primary treating oncologist at the time, recommended that plaintiff have dental work to address the problem. Dr. Caligiuri directed plaintiff to have the dental work performed at Roswell Park Cancer Institute because of the increased risk of hemorrhaging, infection, or other serious complications due to his leukemia and thrombocytopenia (AR at 24–25, 103–06).[1] Dr. Robert Herzog, plaintiff's usual dentist, agreed that plaintiff would be "more safely medically treated in a hospital setting" (AR at 26).

Between April and June, 1994, plaintiff had the recommended dental work performed at the Roswell Dental Clinic by Dr. David Casey. Two crowns were fabricated

1. References preceded by "AR" are to page numbers of the administrative record, filed by defendant as part of the answer to the complaint (item 4).

and inserted to stabilize a maxillary prosthesis, the prosthesis was fabricated, inserted and adjusted, and plaintiff was instructed on placement and removal (AR at 53–58, 78–81). The services were billed as "physician services for complex outpatient visit for established patient" under Roswell billing code # 99215, in the amount of $2,090.00 (AR at 70, 82–83), and a claim for payment was submitted to the Medicare carrier.

On August 17, 1994, a Notice of Medicare Claim Determination was issued denying plaintiff's claim for payment (AR at 92). According to the notice, plaintiff's claim was denied because the dental services he received are excluded from coverage under the Social Security Act and implementing regulations, specifically 42 U.S.C. § 1862(a)(12) and 42 C.F.R. 411.15(*l*) (*id.*). Upon review and reconsideration, the carrier upheld the denial of coverage, and plaintiff was billed for the services (AR at 67–68, 84–86). Plaintiff requested a Medicare Part B hearing, which was held on September 12, 1995 before hearing officer James Kehoe. On September 25, 1995, the hearing officer affirmed the carrier's denial of coverage (AR at 62–65).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR at 61). A hearing was held on January 21, 1997 before ALJ Marilyn Zahm. Plaintiff appeared and testified at the hearing, and was represented by Rivona Ehrenreich, a paralegal counselor employed by Legal Services for the Elderly, Disabled or Disadvantaged of Western New York. Inc. (AR at 93–111). On April 24, 1997, ALJ Zahm issued a decision finding the dental services were reasonable and necessary to protect plaintiff's health while he was undergoing treatment for leukemia and thrombocytopenia, and were therefore covered under Medicare Part B (AR at 19–22).

On June 20, 1997, the Department of Health and Human Services notified plaintiff that the Medicare Appeals Council had decided on its own motion to review the ALJ's decision (AR at 71). On November 18, 1997, the Medicare Appeals Council issued a decision reversing the ALJ's determination, finding that the services were rendered on an outpatient basis to address a dental problem and were not provided as incidental to or an integral part of a covered service (AR at 6–10).

On January 14, 1998, plaintiff commenced this action to review the Medicare Appeals Council's determination (Item 1). The Secretary answered the complaint and moved for judgment on the pleadings (Items 4, 7). On December 21, 1998, oral argument was heard by the undersigned.[2] For the reasons that follow, the Secretary's motion is denied.

## DISCUSSION

Title XVIII of the Social Security Act established the program of Health Insurance for the Aged and Disabled, commonly known as Medicare. 42 U.S.C. § 1395 *et seq.* Part A of the Medicare program provides coverage for the costs of hospital and related post-hospital services. 42 U.S.C. § 1395c *et seq.* Part B of the Medicare program, which is an optional supplemental program financed from premiums by the enrollees and the government, provides coverage for other types of medical services including the cost of physician services. 42 U.S.C. § 1395j *et seq.* Beneficiaries under the Medicare program include individuals aged 65 and over and disabled individuals who are also entitled to benefits under Title II of the Social Security Act. 42 U.S.C. § 1395j.

■ Judicial review of the Secretary's Medicare determinations is available to the same extent as provided for review of disability insurance benefits under 42 U.S.C.

---

**2.** Pursuant to Rule 83.6 of the Local Rules of Civil Procedure for the Western District of New York Law Student Irma Eagleton was granted permission to argue the case on behalf of the plaintiff.

§ 405(g). *See* 42 U.S.C. § 1395ff(b). Under that statute, the district court has the authority to review the Secretary's decision to determine if her findings are supported by substantial evidence and whether she used the proper legal standards in reaching her decision. *Vista Hill Foundation Inc. v. Heckler*, 767 F.2d 556, 558 (9th Cir.1985); *Pfalzgraf v. Shalala*, 997 F.Supp. 360, 363 (W.D.N.Y.1998); *Bick v. Secretary of Health and Human Services*, 1996 WL 393656, at *2 (C.D.Cal. April 8, 1996).

■ As a general rule, Medicare does not provide coverage for dental services. *Bick, supra.* Specifically, the Social Security Act provides:

[N]o payment may be made under part A or part 6 ... for any expenses incurred for items or services—

\* \* \* \* \* \*

where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth, or structures directly supporting teeth, except that payment may be made under part A of this subchapter in the case of inpatient hospital services in connection with the provision of such dental services if the individual, because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services ....

42 U.S.C. § 1395y(a)(12). The Secretary's regulations provide:

The following services are excluded from coverage[:]

\* \* \* \* \* \*

Dental services in connection with the care, treatment, filling, removal, or replacement of teeth, or structures directly supporting the teeth, except for inpatient hospital services in connection with such dental procedures when hospitalization is required because of—

(1) The individual's underlying medical condition and clinical status; or

(2) The severity of the dental procedures.

42 C.F.R. § 411.15(i).

■ The Medicare Carrier's Manual elaborates on this dental services exclusion, as follows:

As indicated under the general exclusions from coverage, items and services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting the teeth are not covered.... If an otherwise noncovered procedure or service is performed by a dentist as incident to and as an integral part of a covered procedure or service performed by him/her, the total service performed by the dentist on such an occasion is covered.... Payment can be made for a covered dental procedure no matter where the service is performed. Therefore, the hospitalization or non-hospitalization of a patient has no direct bearing on the coverage or exclusion of a given dental procedure.

Medicare Carrier's Manual, Section 2136; *see also Chipman v. Shalala*, 894 F.Supp. 392, 395–96 (D.Kan.1995), *aff'd*, 90 F.3d 421 (10th Cir.1996). The Manual contains the Secretary's interpretation of the Medicare statute and regulations, which is entitled to considerable deference unless it is plainly unreasonable or inconsistent with the clear meaning of the statute and regulations. *Id.*, 894 F.Supp. at 395–96; *Bick v. Secretary of Health and Human Services, supra*, 1996 WL 393656, at *3.

In this case, ALJ Zahm determined that the dental services provided to plaintiff, as reflected in the medical records, met the requirements for exception from the dental services exclusion. According to the ALJ, the underlying reason for having the dental work done was to address plaintiff's nutritional difficulties, which were adversely affecting his treatment for leukemia and thrombocytopenia. While the services were rendered at the hospital on an outpa-

tient basis, the ALJ found that the intent of the Social Security Act was to cover this type of procedure, since plaintiff was required to have the procedure performed in a hospital setting. The ALJ also found that the outpatient treatment was an efficient way to save the Medicare system funds. Thus, the ALJ concluded that the services should be covered under Part B (AR at 21).

In reversing the ALJ's decision, the Medicare Appeals Council found that the dental services provided to plaintiff were intended to address a dental problem, and were not incidental to or an integral part of a covered service. The Council found "no showing that the services at issue, *i.e.,* cementing of crowns and a partial denture, were primarily intended as treatment for chronic lymphocytic leukemia with severe thrombocytopenia or were otherwise directly related to another covered treatment for those conditions" (AR at 8).

 The Medicare Appeals Council's findings are not supported by substantial evidence. To the contrary, the record shows that the dental services provided to plaintiff *were* medically necessary and directly related to his treatment for leukemia and thrombocytopenia. The services were rendered at Roswell at the direction and under the supervision of Dr. Caligiuri plaintiff's primary treating oncologist. As explained by Dr. Caligiuri, the dental work was necessary to address plaintiff's "pain in his gums and his need for nutrition" in order to tolerate treatment for his underlying chronic condition. Jessica Dobbins, Roswell's Patient Account Representative, confirmed that "[t]he services rendered are in connection to the treatment of CHRONIC LYMPHOCYTIC LEUKEMIA, and should be considered as covered services with provider reimbursement" (AR at 69). Dr. William Carl, the Senior Cancer Dental Surgeon at Roswell, stated that "[c]ontrol of oral soft tissue and dental pathoses is a significant part of an immunocompromised patient's treatment because of poten-

tial infections occurring in the oral cavity" (AR at 78).

This evidence supports the ALJ's finding that the dental services at issue were rendered as an integral part of plaintiff's treatment for leukemia and thrombocytopenia, and as such should be covered under the Medicare program. Indeed, there is no evidence in the record to support the Medicare Appeals Council's finding that the dental services were *not* an integral part of plaintiff's treatment for his underlying leukemia and thrombocytopenia. Instead, the Medicare Appeals Council relied on the fact that the dental services were provided on an outpatient basis (*see* AR at 8). However, as stated by the Secretary in the Medicare Carrier's Manual, whether the service was performed on an inpatient or outpatient basis "has no direct bearing on the coverage or exclusion of a given dental procedure." Medicare Carrier's Manual, *supra,* § 2136; *Chipman v. Shalala, supra,* 894 F.Supp. at 395–96.

The *Chipman* and *Bick* decisions, relied on by the government, do not require a different result. In the *Chipman* case, the claimant underwent a series of endosteal bone augmentation surgeries as treatment for severe atrophy of the maxilla and mandible, with ensuing chronic pain complicated by a history of peptic ulcer disease. Several months after the surgical procedures, the claimant received porcelain veneer crown implants. His claims for Medicare reimbursement of the cost of the surgery and implants were denied by the carrier on the grounds that the surgery and implants were excluded from Medicare Part B coverage as dental procedures. After a hearing, the ALJ found that the bone augmentation surgeries were covered services under Medicare Part B, but that the porcelain veneer crown implants were dental services and, as such, not covered. The district court upheld the ALJ's determination, finding no evidentiary support for the claimant's position that the implant procedure was an integral part

of the bone augmentation surgery. *Chipman v. Shalala, supra,* 894 F.Supp. at 396. In this case, as discussed above, plaintiff has produced substantial evidence in the form of medical opinions and billing records to show that the dental services at issue were rendered as an integral part of his treatment at Roswell Park Cancer Institute for leukemia and thrombocytopenia.

In *Bick v. Secretary of Health and Human Services,* the claimant underwent root canal procedures to repair damage to his gums and salivary glands caused by radiation treatments four years earlier for metastatic squamous cell carcinoma of the head and neck region. The court upheld the administrative denial of Medicare Part B coverage, finding that the root canal procedures were excluded dental services because they were performed by a different physician, and at a different location, over four years after the radiation treatments. In this case, the dental work was performed at the same time that plaintiff was receiving treatment for his underlying leukemia and thrombocytopenia. The dental procedures were recommended by plaintiff's treating oncologist, and they were performed at the Roswell Park Cancer Institute Dental Clinic by a cancer dental surgeon.

Furthermore, the Social Security Act expressly provides that Medicare coverage is available for a patient who, "because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services." 42 U.S.C. § 1395y(a)(12). The medical evidence in this case clearly shows that the dental procedures were performed at Roswell because of plaintiff's underlying chronic lymphocytic leukemia and severe thrombocytopenia. As noted by ALJ Zahn:

> [Plaintiff] clearly had to be on the hospital premises, close to the hospital facility, because of the dangers involved in the procedure. The ... intent of the law would clearly have been to cover

such a procedure. Also, by doing this as an outpatient procedure in a hospital setting, the procedure was performed in an efficient manner, saving the Medicare system funds.

(AR at 21; *see also In re Beliveau,* Medicare Part B Fair Hearing Decision No. 740, November 24, 1992 (AR at 39–41) (to deny coverage for dental services, performed in hospital on outpatient basis due to patient's underlying medical condition, would be to penalize health care providers for rendering safe, cost-efficient care)).

Accordingly, I find that the Medicare Appeals Council's determination is not supported by substantial evidence.

### CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings (**Item 7**) is denied, the Secretary's decision is reversed, and the case is remanded to the Secretary solely for the calculation of reasonable charges payable to plaintiff.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff.

**SO ORDERED.**